# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Kevon K. CUDJOE
### Yeoman Third Class (E-4), U.S. Coast Guard

## CGCMS 24422

## Docket No. 1326

## 19 November 2010

Special Court-Martial convened by Commanding Officer, Integrated Support Command St. Louis. Tried at St. Louis, Missouri, on 13-16 January 2009.

| | |
|---|---|
| Military Judge: | CAPT Donald J. Rose, USCG |
| Trial Counsel: | LCDR Janine E. Donovan, USCG |
| Assistant Trial Counsel: | LT Kismet R. Wunder, USCGR |
| Defense Counsel: | LTJG Kiersten J. Korczynski, JAGC, USNR |
| Appellate Defense Counsel: | LT Kelley L. Tiffany, USCGR |
| Appellate Government Counsel | CAPT Stephen P. McCleary, USCG |
| | LT Herbert C. Pell, USCGR |

## BEFORE
## McCLELLAND, McGUIRE & McTAGUE
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial composed of officer members. Pursuant to his pleas of guilty, Appellant was convicted of one specification of failure to obey a general order or regulation and one specification of failure to obey an order, both in violation of Article 92, Uniform Code of Military Justice (UCMJ). Contrary to his pleas, Appellant was also convicted of one specification of disrespect toward a superior petty officer, in violation of Article 91, UCMJ; one specification of making a false official statement, in violation of Article 107, UCMJ; two specifications of larceny, in violation of Article 121, UCMJ; and one specification of violating 18 U.S.C. § 1029 and one specification of violating 18 U.S.C. § 1344, both in violation

of Article 134, UCMJ. The court sentenced Appellant to confinement for seventy days; reduction to E-2; a fine of $1500 and in the event the fine is not paid, confinement for ninety days; and a bad-conduct discharge. The Convening Authority approved the sentence as adjudged.

Before this Court, Appellant has assigned two errors: (1) the military judge erred by failing to consider dismissal of two of the three charges that he determined were unreasonably multiplicious after the case on findings; and (2) this Court should consider the unreasonable and unexplained post-trial delay in determining the sentence that should be approved under Article 66(c). We reject the first issue, and grant a small measure of sentence relief on the second.

### Multiplicity and unreasonable multiplication

Appellant states in his first assignment that the military judge erred by failing to consider dismissal of two of the three charges that he determined were unreasonably multiplicious after the case on findings. This statement is glaringly inaccurate in one respect: the military judge did not determine that the charges at issue were *unreasonably* multiplicious. Upon Appellant's repeated motion concerning Charge III and Charge IV Specification 3, he ruled both before the trial began and after the Government rested its case on the merits that there was no unreasonable multiplication of charges. (R. at 30, 737; Appellate Ex. XXXIII.) After findings, he elicited the Government's position that the specification of Charge III and Specifications 3 and 4 of Charge IV were multiplicious for sentencing, to which the defense agreed. (R. at 919.) Accordingly, he instructed the court that these three specifications "are not separate offenses for the purposes of punishment." (R. at 925.)

We take Appellant's actual argument to be that the three specifications constituted an unreasonable multiplication of charges, and, further, that when the military judge held them to be multiplicious for sentencing, in effect he found unreasonable multiplication of charges and should have dismissed two of the specifications.

The specifications at issue alleged larceny, under Charge III (Article 121, UCMJ), and violations of two criminal statutes, under Charge IV[1] (Article 134, UCMJ).  The two statutes are 18 U.S.C. § 1029(a)(2) and (5)[2], "Fraud and related activity in connection with access devices," and 18 U.S.C. § 1344, "Bank fraud."

The specification under Charge III alleges that Appellant, between 22 November 2007 and 12 January 2008, stole "various merchandise and cash, of an approximate value of $1,148.60, the property of CapitalOne Bank."

Charge IV Specification 3 reads in pertinent part:

. . . from on or about 22 November 2007 to on or about 12 January 2008, with intent to defraud, knowingly use an unauthorized access device, to wit: a CapitalOne credit card in the name of [LMM], obtaining over $1,000.00 of merchandise in a one year period, in violation of 18 U.S.C. § 1029(2) and (5) . . .

Charge IV Specification 4 reads in pertinent part:

. . . from on or about 22 November 2007 to on or about 12 January 2008, did obtain property owned by a financial institution to wit: CapitalOne Bank, by means of fraudulent representation, in violation of 18 U.S.C. § 1344 . . .

The evidence of all three offenses was to the effect that Appellant applied for and received a CapitalOne credit card in the name of LMM, a Coast Guard petty officer for whom Appellant had made an identification card in the course of his duties, and used the credit card to buy merchandise in stores.  Ultimately, CapitalOne was not paid for charges in the amount of $1,148.60 on this credit card account, taking a loss of that amount.

As noted above, Appellant submitted before pleas a motion to dismiss with respect to Charge III and Specification 3 of Charge IV, among others, based on multiplicity or unreasonable multiplication of charges.  (Appellate Ex. XXIX.)  The military judge denied the motion, but in response to a defense question, stated that he was not addressing multiplicity for sentencing, and would consider that in the event of convictions.  (R. at 31.)  Appellant renewed

---

[1] These specifications were originally Specifications 6 and 7 of Charge V.  Some specifications and charges were dismissed before trial, leading to their redesignations as Specifications 3 and 4 of Charge IV.

[2] In the specification, the statute was rendered as "18 U.S.C. § 1029(2) and (5)," which do not exist; it is clear from the record that all parties understood the reference was to 18 U.S.C. § 1029(a)(2) and (5).

the motion after the Government rested, and the military judge reiterated both his denial of the motion and his willingness to consider multiplicity for sentencing in the event of a conviction. (R. at 737.)  After findings, the military judge raised the issue of multiplicity for sentencing, and the Government immediately conceded that not only the Charge III specification and Charge IV Specification 3 but also Charge IV Specification 4 were all multiplicious for sentencing.  The defense agreed.  (R. at 919.)

The Court of Appeals for the Armed Forces "ha[s] endorsed a five-part test for determining whether the Government has unreasonably multiplied charges:

> "(1)  Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?
>
> "(2)  Is each charge and specification aimed at distinctly separate criminal acts?
>
> "(3)  Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
>
> "(4)  Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?
>
> "(5)  Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?"

*United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004) (citing *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)).[3]

The military judge's decision on unreasonable multiplication of charges is reviewed for an abuse of discretion.  *Id.*

Concerning the first factor, Appellant did object at trial, although he objected with respect to only two of the three specifications about which he now raises the issue.  Concerning the fourth factor, since the military judge treated the three specifications as multiplicious for sentencing, there was no increased punitive exposure.[4]  *See id.* at 96.

---

[3] We have previously accepted and applied this test.  *United States v. Lind*, 64 M.J. 611, 614 (C.G.Ct.Crim.App. 2007).

[4] At this special court-martial, arguably there was no increase in punitive exposure in any event, since the maximum sentence for any one of the specifications exceeded the forum's maximum.

The other three factors are more subjective.  Without belaboring them, we find no abuse of discretion in the military judge's determination that there was no unreasonable multiplication of charges.  Further, we do not see any extreme or unreasonable piling-on of charges in the three specifications, so as to call for use of our Article 66(c) authority.  But we will comment on some of Appellant's arguments.

Concerning factors two and three, Appellant insists that the three specifications at issue are aimed at the same, not "distinctly separate," criminal acts, suggesting that the military judge relied on the elements test to conclude that they addressed separate criminal acts.  The meaning of "distinctly separate criminal acts" in *Pauling* and *Quiroz* is not clear.  It is surely true that a single course of conduct provided the basis for all three specifications against Appellant.  However, this does not mean that it is an unreasonable exaggeration to lay more than one charge against Appellant for his single course of conduct.  Charge IV Specification 3, in focusing on use of an unauthorized access device (in this case, improperly-obtained credit card), has an element that captures a significant additional feature of Appellant's conduct – a feature absent from larceny, Charge III.  Likewise, Charge IV Specification 4 focuses on the fact that the victim is a financial institution.  These are features that are arguably worth preserving in the final list of convictions.[5]  Contrary to Appellant's argument, retaining the three separate convictions is not "fundamentally unreasonable," in our view.

Appellant characterizes the military judge's action as failing to consider dismissal as an option to remedy unreasonable multiplication of charges, and calls this error, citing *United States v. Roderick*, 62 M.J. 425 (C.A.A.F. 2006).  In *Roderick*, the military judge stated that he had "no power at the findings phase to address allegations of unreasonable multiplication of charges", but after findings, he merged certain specifications.  *Id.* at 433.  The court held that dismissal is a remedy available to the trial court, and the military judge had erred in not considering dismissal

---

[5] This reasoning does not necessarily call for retention of the larceny charge since the bank was identified as the victim under that charge, but Appellant did not mention Charge IV Specification 4 in his motion at trial.  Hence the military judge did not abuse his discretion in not dismissing either Charge III or Charge IV Specification 4.  We find no plain error in his failure to consider that possibility.  We note that neither of the Charge IV specifications includes the intent to permanently appropriate the property involved, as Charge III does.  We decline to dismiss any of the specifications.

an option available to him. *Id.* The military judge in the instant case made no such error; he fully considered and rejected the assertion of unreasonable multiplication of charges, with no indication that he believed he lacked the power to dismiss.

Appellant argues that offenses that are not multiplicious for findings are normally not multiplicious for sentencing, citing *United States v. Balcarczyk*, 52 M.J. 809 (N.M.Ct.Crim.App. 1999), and therefore when the military judge acceded to the Government's position that the three specifications were multiplicious for sentencing, he was required to dismiss two of them. This reasoning represents a gross misreading of *Balcarczyk*. The appellant in *Balcarczyk* made the same argument, and the court rejected it, calling the treatment of several offenses as the same for sentencing an equitable remedy. *Id.* at 812-13.

**Post-trial delay**

Appellant urges us to grant meaningful relief by setting aside the bad-conduct discharge or the entire sentence, or dismissing the charges and specifications, on account of unreasonable post-trial delay.

The original sentence was confinement for seventy days; reduction to E-2; a fine of $1500 and in the event the fine is not paid, confinement for ninety days; and a bad-conduct discharge. Appellant received credit for seventy days against confinement. (R. at 932.) The Convening Authority approved the sentence.

Processing of the record of trial (record or ROT) took place according to the following chronology. This chronology is taken from the memorandum dated 7 October 2009 forwarding the record to Coast Guard Headquarters (CGHQ)[6] and from the ancillary documents attached to the record.

---

[6] The Coast Guard Military Justice Manual requires an accounting for post-trial delay where more than 120 days elapsed between the date sentence was adjudged and the date of the convening authority's action. Paragraph 5.F.4 of COMDTINST M5810.1D dated 17 August 2000.

| Date | Action | Days elapsed |
|------|--------|--------------|
| 16 Jan 09 | Sentence adjudged | 0 |
| 14 Apr 09 | ROT received by trial counsel from transcriptionist | 88 |
| 27 Apr 09 | ROT sent to military judge | 101 |
| 05 Jun 09 | ROT authenticated by military judge | 140 |
| 05 Jun 09 | Authenticated ROT received by trial counsel | 140 |
| 15 Jun 09 | ROT sent to defense counsel | 150 |
| 27 Jul 09 | Appellant complains of post-trial delay | 192 |
| undated | Staff Judge Advocate's Recommendation (SJAR) | |
| 24 Aug 09 | SJAR sent to defense counsel | 220 |
| 14 Sep 09 | Convening Authority's action | 241 |
| 07 Oct 09 | Memorandum forwarding ROT to CGHQ | 264 |

The record was referred to this Court on 29 October 2009, forty-five days after the Convening Authority's action.

Notable periods of post-trial processing are eighty-eight days taken to transcribe the record, thirty-nine days taken by the military judge to authenticate the record, eighty days taken after receipt of the authenticated record to produce the SJAR and send it to defense counsel, and twenty-three days between the Convening Authority's action and sending the record to Headquarters. The Memorandum forwarding the record gives no meaningful explanation for these delays, attributing them only to "administrative processing."[7]

The Court of Appeals for the Armed Forces applies "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial [and] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The "*Barker* four-factor analysis" comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

---

[7] The Government, in its Answer and Brief, calls attention to the lengthy record (965 pages) to explain the delay in referral after the Convening Authority's action.

Appellant claims a due process violation, and the delays in this case are sufficient to raise the presumption. The lengths of the delays are 121 days beyond the 120-day period prescribed by *Moreno* for convening authority action, and fifteen days beyond the 30-day period prescribed for referral to this Court. The period to the Convening Authority's action is twice the *Moreno* standard, suggesting a lack of concern for timely processing, but not so lengthy as to weigh strongly against the Government. The period between convening authority action and commencement of appellate review is relatively insignificant in itself. In this case the first factor does not weigh strongly against the Government.

There are no persuasive reasons given for either delay. The second factor weighs against the Government.

Appellant did assert the right to timely review before the Convening Authority, requesting that the Convening Authority grant clemency because of the delay that had already occurred. The third factor weighs against the Government as to the time period preceding the Convening Authority's action. No further assertion of right to timely review has been made after the Convening Authority took action.

As to the fourth factor, *Moreno* identified three sub-factors: oppressive incarceration pending appeal, anxiety and concern, and impairment of ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 139-40. Since Appellant's sentence to confinement for seventy days was offset by a seventy-day credit, it appears that he suffered no oppressive incarceration while awaiting post-trial action. Also, both the first and third sub-factors depend upon a successful appeal, which is not present in Appellant's case. Regarding anxiety and concern, to be cognizable, it must be "particularized anxiety and concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. Appellant does not assert any particularized anxiety and concern. No other prejudice is asserted and it is not apparent what prejudice might have resulted from any of the delay. This factor does not weigh against the Government.

Although "no single factor [is] required to find that post-trial delay constitutes a due process violation," *id.* at 136, in the absence of prejudice the other factors must be very weighty against the Government to warrant a due process violation finding, the delay being "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 361-62 (C.A.A.F. 2006). The convening authority's action in *Toohey* took place 644 days after the date of sentence, and the Court of Criminal Appeals issued its decision 2240 days (more than six years) after the date of sentence. By contrast, the delays in our case are not egregious. In the absence of prejudice, we find no due process violation.

We turn now to Appellant's argument that we should grant sentence relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), which held that we may grant relief for excessive post-trial delay without a showing of prejudice. *Id.* at 224. Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances, in exercising its responsibilities under Article 66(c), UCMJ. *Id.* We have granted such relief in several cases, most recently in *United States v. Medina*, 69 M.J. 637 (C.G.Ct.Crim.App. 2010), and before that in *United States v. Greene*, 64 M.J. 625 (C.G.Ct.Crim.App. 2007).

The delay in the Convening Authority's action was more than two months longer in this case than in *Greene*, even though in this case the Government was on notice of the *Moreno* standards. Moreover, the delay in this case was completely unexplained and persisted for another four weeks after Appellant's assertion of the right to timely review before the next step occurred (sending the SJAR to defense counsel). As in *Greene*, we find a clear lack of institutional diligence and unreasonable post-trial delay. As in *Greene*, we will consider it when conducting our sentence appropriateness review under Article 66, UCMJ.

### Promulgating Order

Although not raised by Appellant, there is an inaccuracy in the promulgating order. The Order incorrectly states that Appellant was found guilty of absence without leave, in violation of Article 86, UCMJ. In fact, Appellant was found not guilty of that charge (Additional Charge I)

and specification.  (R. at 872-73.)  We find no material prejudice from the error.  However, the promulgating order must be corrected.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ.  Upon such review, the findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved.  Accordingly, the findings of guilty are affirmed.  In view of our finding of unreasonable post-trial delay, only so much of the sentence as provides for confinement for seventy days; reduction to E-3; a fine of $1500 and in the event the fine is not paid, confinement for ninety days; and a bad-conduct discharge is affirmed.  The record of trial shall be returned to the Convening Authority, who shall issue a new promulgating order free of errors.

Judges MCGUIRE & MCTAGUE concur.



For the Court,


John T. Ure
Deputy Clerk of the Court